IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT RESTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: CV-03-PT-2274-E |
| | ) | |
| McWANE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

This cause comes on to be heard upon the Motion for Summary Judgment filed by Defendants McWane, Inc. and Union Foundry Company[1] (hereinafter "McWane") on August 11, 2006.

FACTS[2] AND PROCEDURAL HISTORY

Plaintiff Robert Rester ("Rester") began his employment with McWane in October 1978, and continuously worked for various McWane entities[3] in Alabama and in Ontario until his termination on September 19, 2002. By 1999, Rester had risen to the position of plant manager, but was demoted to maintenance supervisor in February 2001. He remained in this position until he was terminated. Rester has never been disciplined by McWane.

---

[1] Union Foundry is a subsidiary of McWane, Inc., and both defendants are represented by the same counsel. In addition to the grounds for summary judgment noted below, McWane claims that it is entitled to summary judgment because Rester was not its employee, but Union Foundry's. Rester does not address this argument in his brief. For the sake of clarity, the court will collectively refer to both defendants as "McWane."

[2] The court notes where "facts" appear disputed.

[3] For the purposes of its Motion for Summary Judgment, McWane concedes that Rester was "capable of performing the essential functions" of the position he held at Union Foundry at the time his employment was terminated.

Rester began missing work "a day here or there"[4] in 2002, according to Union Foundry Personnel Manager John Norris, and management had not investigated the cause of Rester's absenteeism.[5]  In June 2002, Rester was required to submit to a "fitness for duty" medical examination before returning to work.  Rester was examined by Dr. Don Casey,[6] who found that Rester could not return to work because of heart problems.  Dr. Casey also expressed concerns about Rester's "binge drinking or 'alcoholism,'" and referred him to a cardiologist, Dr. Osita Onyekwere.[7]  Dr. Onyekwere diagnosed Rester with "tachyarrhythmia and excessive alcohol consumption," as well as abnormalities in his liver enzymes - the latter likely a result of inordinately high consumption of alcohol.[8]  Dr. Onyekwere excused Rester from work for four weeks to allay his heart condition, and McWane ordered him to undergo treatment for alcoholism at the Bradford Clinic before returning to work.  Dr. Onyekwere also told Rester that he must first complete the treatment for his heart condition before beginning treatment for his alcoholism.[9]

When Rester again met with Dr. Casey on or about July 25, 2002, the doctor claimed that

---

[4] McWane describes Rester's absences as "excessive."

[5] Rester claims that his heart troubles began in May and June 2002, necessitating hospital visits and medical testing.

[6] Rester's complaint several times identifies Dr. Casey as McWane's "company doctor," a characterization to which McWane objects.

[7] Rester claims that Dr. Casey "incorrectly alleged" that Rester was not following his orders for treatment of the heart condition and alcoholism and refused to continue treating him.  He informed Rester of his decision to discontinue treatment on July 25, 2002, specifically citing Rester's refusal to get treated for his "binge drinking."

[8] Dr. Onyekwere's report noted Rester's admission that he consumed twenty-four (24) beers per week.

[9] McWane concedes that Dr. Onyekwere released Rester from work from July 29, 2002 to August 26, 2002, but denies that she told him that he could not undergo alcohol abuse treatment until after the convalescence she ordered for his heart condition.

Rester was not following his order to undergo treatment for "binge drinking" and was not

heeding his statements about the need for Rester to "drastically reduce his alcohol consumption."

Rester apparently sought treatment at the Bradford Clinic on or about July 27, 2002, but left early

so that he could be with one of his daughters as she gave birth.[10]  On July 31, 2002,[11] Norris

informed Rester that he was being placed on unpaid leave from McWane, with his health

insurance coverage to terminate on September 8, 2002.[12]  Norris also informed Rester that his

employment would be terminated if he did not seek treatment for his alcoholism.  When Rester

sought further treatment at Bradford, he decided that he could not financially afford to undergo

the treatment.[13]  Rester relayed this information to Dr. Casey on September 3, 2002.  In an

evaluation dated September 11, 2002, Dr. Casey stated that Rester had yet to complete his

alcoholism treatments at Bradford, although his heart condition had abated.

On or about September 19, 2002, Rester received a letter from Norris that informed him

that McWane was terminating his employment due to his "failure to take any meaningful steps

toward treatment and rehabilitation for your alcohol abuse problem."[14]  Over the next several

---

[10] Rester claims that he conferred with the Bradford evaluator, who agreed that Rester could return for treatment after the birth of his grandchild.  McWane asserts a lack of knowledge as to whether these events ever took place, and Rester has not produced any documentary evidence of this purported visit to Bradford in late July 2002.

[11] Rester claims that on this same day, July 31, 2002, Dr. Casey made appointments for Rester's future visits to the Bradford Clinic.  Dr. Onyekwere found on August 26, 2002 that Rester's heart condition now permitted him to resume his work.

[12] Rester's complaint gives this date as September 18, 2002, and his Response to Defendants' Motion for Summary Judgment gives the date as September 8, 2002.

[13] *See* n.24, *infra*.

[14] Rester notes Norris's stated belief that Rester was covered by a McWane insurance policy, and states that Norris "never undertook to determine whether that policy would cover for part or all of Mr. Rester's treatment at Bradford."

3

days, Rester was contacted by McWane official Jim Proctor and McWane counsel Mitch Allen, and offered a position at M&H Valve, a McWane affiliate located in Anniston, Alabama. Rester requested that the offer be put into writing. He was asked to take a drug test. Rester did so, and passed, and never heard anything else from McWane regarding this matter.[15]

Rester claims that his termination from McWane violates the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"); the Age Discrimination in Employment Act of 1967, *as amended* 29 U.S.C. § 621, *et seq.* ("ADEA"); and the Alabama Age Discrimination in Employment Act, Ala. Code § 25-1-20, *et seq.* ("AADEA").[16] Rester filed a disability discrimination charge with the Equal Employment Opportunity Commission on January 23, 2003, received a Notice of Right to Sue,[17] and timely instituted action in this court on August 15, 2003.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue

---

[15] McWane concedes that M&H Valve Company had discussions with Rester about hiring him, but disputes the remainder of the "facts" outlined in this paragraph.

[16] McWane submits that, pursuant to Ala. Code § 25-1-29, claims under the Alabama age discrimination statute are to be analyzed under the "same framework, are afforded the same remedies and are subject to the same defenses established under...the analogous federal age discrimination statute." As such, McWane does not offer separate arguments against Rester's ADEA and AADEA claims.

[17] The Right to Sue letter that Rester received contained the following language: "[t]he facts you have presented, all of which have been accepted as true, do not rise to the level of a violation of the law. Thus, there is no claim that a violation occurred as you alleged under the statutes enforced by the [Equal Employment Opportunity] Commission. Your age and your alleged disability do not appear to have played any part in the employer's decision to terminate you...[u]nder the Americans With Disabilities Act your alcoholism would be considered a disability only if you were seeking treatment. However, you were terminated because you declined treatment for your alcoholism." A copy of the Right to Sue letter, labeled as Defendant's Exhibit 16, is attached to this opinion. While the Equal Employment Opportunity Commission's determination is not binding, it is consistent with the statutory and regulatory provisions, legislative history, caselaw, and the facts of this case.

4

as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for

summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477

U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could

not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000)

(quotation omitted). The non-moving party then bears the burden of pointing to specific facts

demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-

moving party "must either point to evidence in the record or present additional evidence

'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary

deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted).

Summary judgment is required where the non-moving party merely repeats its conclusory

allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay,* 265

F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for

discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment

is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a

light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291,

1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the

non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v.*

*Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

ARGUMENTS[18]

McWane proffers arguments in favor of summary judgment on (Part I) Rester's ADA

claim, and (Part II) Rester's ADEA/AADEA claim.  It further argues that this cause is due to be

dismissed under the doctrine of res judicata (*see* Part III).

I.   **ADA Claim.**

   A.   **McWane's Position.**

McWane claims that it is entitled to summary judgment on Rester's ADA claim because

1) McWane did not perceive Rester to be disabled within the meaning of the ADA, and 2) Rester

cannot show that the "legitimate, non-retaliatory reason for his termination is a pretext for

disability discrimination."[19]

1.   **McWane did not "perceive" Rester to be "disabled."**

An individual need not actually be "disabled" within the meaning of the ADA to come

under it so long as the individual's employer "perceives her as having an ADA-qualifying

disability, even if there is no factual basis for that perception." *Carruthers v. BSA Advertising,*

*Inc.*, 357 F.3d 1213, 1216 (11th Cir. 2004).  Such a perception implicates the ADA where "(1) an

employer mistakenly believes that a person has a physical impairment that substantially limits

one or more major life activities, or (2) an employer mistakenly believes that an actual

---

[18] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

[19] McWane also argues that Rester is not a "qualified individual with a disability" as that phrase is defined in the ADA at 42 U.S.C. § 12112(a).  Although Rester's response includes a title heading that reads "Mr. Rester is a 'Qualified Individual With a Disability,'" the accompanying text goes on to argue that McWane perceived Rester as having an ADA-qualified disability.

nonlimiting impairment substantially limits one or more major life activities."[20] *Sutton v. United Airlines*, 119 S. Ct. 2138, 2150 (1999).

McWane submits that Rester cannot demonstrate by substantial evidence that it perceived him as being disabled. It notes Rester's deposition testimony that he has no documentary evidence to support his claims, and that he could not identify any McWane employees who considered Rester's alcoholism to be a debilitating disability. Further, Rester testified at his deposition that he never told anyone at McWane that he felt his alcoholism impeded his ability to carry out the duties commensurate with his position. Consequently, McWane maintains that it is entitled to summary judgment due to Rester's lack of evidence to support the claim that McWane perceived him as being disabled.

> **2.    McWane's Termination of Rester was for a legitimate, non-discriminatory reason, and not as a pretext for disability discrimination.**

McWane argues that, even if Rester could establish that McWane perceived him as disabled within the meaning of the ADA, it would still be entitled to summary judgment because Rester cannot show his termination was a pretext for disability discrimination. Characterizing Rester's termination as an outcome of his own decision between two choices - treatment, or termination - McWane points out that Rester was ordered to seek professional treatment for his alcoholism and, "for whatever reason, [Rester] did not get help." *See Office of the Senate Sergeant at Arms v. Office of Senate Fair Employment*, 95 F.3d 1102, 1107 (Fed. Cir. 1996)

---

[20] McWane offers 29 C.F.R. § 1630.2(I) as a representative definition of what is meant by "major life activity." The regulation characterizes major life activities as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."

(discipline is "appropriate" when an employee refuses treatment when offered, and a "firm choice between treatment and discipline" does not run afoul of the ADA's requirement of a reasonable accommodation of an individual with a disability).  Rester stated in his deposition that he believed he was terminated for failing to seek professional treatment and that his employer "never gave him any other reason for his termination."

**B.    Rester's Response.**[21]

**1.    McWane perceived Rester to be a "Qualified Individual with a Disability."**

Rester notes the undisputed fact that McWane was aware of his alcoholism (as evidenced by its order that he seek treatment at the Bradford Clinic and from Drs. Onykwere and Casey before being cleared to return to work), and argues that this is per se evidence of McWane's perceiving him as disabled. Rester argues that the breadth of McWane's efforts to require Rester to seek treatment leaves no question that it perceived Rester as having a physical or mental impairment, and that "an employer would not make completion of these activities a prerequisite for returning to employment if the impairment was not perceived as 'substantial.'"[22]

**2.    McWane Never Made "Reasonable Accommodations" for Rester's Disability**

Rester also claims that McWane required him to seek treatment for his alcoholism despite his lack of financial ability to pay.  He notes Norris's testimony that Rester was covered by a company insurance policy but that Norris failed to investigate whether that policy would cover

---

[21] In addition to the specific argument summarized here, Rester's brief also states its blanket opposition to all grounds in McWane's Motion for Summary Judgment.

[22] This court concludes that there is a question of fact with regard to whether Rester was perceived to have a problem with "binge drinking," and, perhaps, alcoholism.

8

Rester's treatment at Bradford, and alleges that "McWane clearly breached its statutory duty under the ADA when it failed to even consider options on how to pay for treatment."[23]  Because McWane knew of Rester's purported disability and did not accommodate him, Rester argues, his claim survives summary judgment.

### 3.   McWane's Allegedly Legitimate Reasons for Firing Rester were a Pretext for Discrimination.

Again, Rester points out that 1) Norris never undertook to determine whether or not Rester's employee benefit insurance would finance the costs of the Bradford Clinic treatment that he had been ordered to complete; and,  2) that Rester was financially unable to pay for the treatment himself.  He also reiterates the position that he need not show discriminatory animus by McWane to survive summary judgment, citing *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 264 (1st Cir. 1999) (employer liable under the ADA where employer knew of employee's physical/mental limitations, did not accommodate the limitations, and the failure to accommodate "affected the terms, conditions, or privileges of the plaintiff's employment").

### C.   McWane's Reply.

### 1.   McWane Claims that Rester conceded and/or did not argue that he is not a "qualified individual with a disability" within the meaning of the ADA.

---

[23] To substantiate this claim, Rester cites *Bultemeyer v. Fort Wayne Community Schs.*, 100 F.3d 1281, 1283-84 (7th Cir. 1996) for the proposition that an employer's action need not be motivated by discriminatory animus to be "discriminatory" within the meaning of the ADA.  Rester argues instead that "any failure to provide reasonable accommodations for a disability is necessarily 'because of a disability'– the accommodations are only deemed reasonable (and, thus, required) if they are needed because of the disability...[h]ence, an employer who knows of a disability yet fails to make reasonable accommodations violates the statute, no matter what its intent, unless it can show that the proposed accommodations would create undue hardship for its business."  Rester also cites other cases from outside of the Eleventh Circuit to bolster this argument.

McWane points out that Rester did not allege in his response that he had an actual disability - only that McWane perceived him as having one.

> **2.    Rester's Claim that McWane perceived him as being disabled fails because he cannot identify any major life activity that is substantially limited by his purported disability.**

McWane argues that because Rester cannot identify "a single major life activity which he believes [McWane] believed him to be substantially limited in performing" due to his alcoholism, the claim runs afoul of the rational jury test and must be disposed of through summary judgment. McWane argues that its decision to order Rester into alcoholism treatment at Bradford is insufficient evidence that it regarded him as being substantially limited in performing a major life activity. It claims that it "did not regard Plaintiff [Rester] as anything, much less disabled...[McWane] merely heeded the advice of a qualified and independent physician that Plaintiff [Rester] should undergo alcohol treatment." A denial of summary judgment here would be tantamount to imposing liability "because a company heeded the advice of a physician."

> **2.    Even if he could established that McWane perceived him as being disabled, Rester's claim fails because he never requested the designated accommodation, which itself is unreasonable.**

Citing *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1362 (11th Cir. 1999), McWane maintains that "the law in the Eleventh Circuit is well-settled that a Plaintiff claiming he was denied a reasonable accommodation [pursuant to the ADA] must establish a specific request for such an accommodation," and that "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made."

10

*Stewart v. Happy Herman's Creative Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997).

McWane claims that even if Rester could establish that McWane perceived him to be disabled, summary judgment should still be granted because Rester never requested that McWane accommodate his disability by funding his alcohol abuse treatment at Bradford. He did tell Norris that he could not afford the treatment,[24] but there is nothing in the record to indicate that he specifically asked for McWane to pay for it. Moreover, Norris testified that he thought the treatment was covered under Rester's employee benefit insurance plan.

McWane further argues that even if Rester had requested the accommodation, it would have not been obliged to provide it because it would be an unreasonable accommodation. To substantiate this position, McWane cites *Van Ever v. New York State Dept. of Corrections,* 2000 WL 1727713, *3 (S.D.N.Y. 2000) (holding that insofar as alcoholic plaintiffs are concerned, an employer need only provide the employee with unpaid time off to complete a treatment program in order to comply with the ADA), as well as the legislative history of the ADA.[25] Since McWane afforded Rester almost three months to undergo alcohol abuse treatment, McWane argues, this was sufficient to satisfy the legal mandates of the ADA. McWane concludes that to require it to pay for Rester's treatment in such circumstances would be "simply unreasonable and

---

[24] McWane appended excerpts to its Reply Brief from the record of Rester's bankruptcy proceedings in the United States Bankruptcy Court for the Northern District of Alabama. McWane argues that this evidence shows that Rester possessed assets (two pieces of real property collectively valued at $265,000; sundry items of cash and personal property, both in his possession or leveraged to a pawn establishment, altogether worth $5,750; two horses worth $800; two vehicles collectively valued at $2,700; and a 2000 model Harley Davidson motorcycle worth $18,000) during the pertinent time period. McWane argues that Rester could have liquidated these assets in order to finance alcohol abuse treatment.

[25] McWane notes that United States Senator Tom Harkin of Iowa, chief sponsor of the ADA in the U.S. Senate, stated in response to a colleague's question that there would be no "legal obligation" for an employer to provide rehabilitation for an employee who is using alcohol. 135 CONG. REC. S10777 (daily ed. Sept. 7, 1989). The court more extensively notes the ADA's legislative history at n.40.

unprecedented and goes far beyond what the ADA could possibly require an employer to do under these circumstances."

## II.    ADEA/AADEA claim.

### A.    McWane's Position.

McWane argues that it is entitled to summary judgment on Rester's age discrimination claim because Rester has failed to establish a prima facie case for age discrimination[26] by failing to show that he was "replaced by someone outside the protected age category (or someone substantially younger)." The next individual hired for the maintenance supervisor position that Rester held was 41 years of age, only three years younger than Rester (44 years old at that time), and the next four were 55, 50, 55, and 57 years of age, respectively. This is an average of 51.6 years of age. McWane also notes that John Norris, the McWane official who made the ultimate decision to terminate Rester's employment, was five years older than Rester, and submits that this fact further undermines Rester's age discrimination claim. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991). McWane makes the general contention that Rester has failed to establish that its "legitimate, non-retaliatory reason" for terminating his employment is a pretext for age discrimination.

### B.    Rester's Response.

Rester's brief included neither a response to McWane's contentions regarding his age discrimination claim nor even a cursory reference to it.

---

[26] Citing *Kelliher v. Veneman,* 313 F.3d 1270, 1275 (11th Cir. 2002) and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), McWane frames the elements of a prima facie case of age discrimination as follows: the plaintiff must establish that s/he was "(1) a member of the protected class; (2) qualified for the position; (3) subjected to adverse employment action; and (4) replaced by a person outside the protected class or suffered from disparate treatment because of membership in the protected class." McWane stipulated that Rester meets the first three elements of the prima facie case.

**C.      McWane's Reply.**

Citing Rester's failure to respond to (or even mention) its position on his age

discrimination claim, McWane submits that summary judgment is due to be granted as to this

claim since Rester has "clearly abandoned" it.

**III.      Effect of Prior Litigation.**

**A.      McWane's Position.**

McWane also argues that, despite this court's expression to the contrary,[27] Rester's

previous lawsuits[28] bar the instant claims under the doctrine of res judicata because the events

that give rise both to the instant claims and those in the prior lawsuit all arise out of the same

nucleus of operative fact. *See O'Connor v. PCA Family Health Plan*, 200 F. 3d 1349 (11th Cir.

2000) (plaintiff's discrimination claim barred by res judicata after her Family and Medical Leave

Act Claim was dismissed in a prior lawsuit).

In addition to arguing that Rester's previous lawsuits have a res judicata effect on this

lawsuit, McWane cites them as persuasive evidence for its contention that Rester will "say or

claim anything to support his lawsuit *du jour*."[29]

**B.      Rester's Response.**

---

[27] This court's order of March 22, 2005 dismissed Rester's *qui tam* action against McWane - the first suit that Rester filed against McWane.  In the order of dismissal, this court stated: "There is no intention to reach the issues addressed in a separate action brought by this plaintiff against this defendant, nor to create collateral estoppel, nor res judicata with reference thereto.  The claims in this action are considered severally from those claims."

[28] Rester previously filed suit against McWane on two occasions, once in the Circuit Court of Calhoun County, Alabama, and once in this court, each time stating different legal theories of relief for his September 19, 2002 termination.

[29] To emphasize the point, McWane refers to Rester's deposition testimony, where Rester stated: "...I really don't know why I got fired...I mean,...that's what I don't know.  Is it age discrimination, disability, or because I was talking to reporters.  I don't know why I got fired, that's all I'm saying...I have no idea...[t]here could be 200 underlying reasons."

In response, Rester cites Rule 8 of the Federal Rules of Civil Procedure, which permits a plaintiff to raise inconsistent claims in a complaint.[30]  He dubs McWane's position on this question as the "inconsistent position" argument, and states that this argument is "not based on any legal theory or doctrine and contains no citation to authority."

      **C**      **McWane's Reply.**

McWane did not make any further arguments on this question in its reply brief.

**CONCLUSIONS OF THE COURT**

**I.**    **ADA Claim.**

The court will grant summary judgment as to Rester's ADA claim.  Rester claims that his alleged alcoholism implicates the protections of the ADA because it substantially limits the major life activity of working.  This claim fails as a matter of law because Rester has not shown that he requested an accommodation, nor that his presently proposed accommodation (funding of alcohol treatment) is reasonable.[31]  His claim that his alleged alcoholism substantially limits the major life activity of working is questionable.

Failure to Request an Accommodation

The evidence does not show that Rester requested an accommodation.[32]  He argues that

---

[30] Rester also notes *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999) (recognizing that a party is permitted under the federal rules to "set forth two or more statements of a claim or defense alternatively or hypothetically, and to state as many separate claims or defenses as the party has regardless of consistency").

[31] In a recorded telephone conference on September 14, 2006, Rester stated that the disability he claimed was "alcoholism" and that the accommodation he purportedly requested was "treatment for alcoholism." Rester also acknowledged that he had no specific authority to support his argument that McWane was required to pay for the treatment. He further acknowledged that he was seeking the treatment only if McWane agreed to pay for it.

[32] In the recorded phone conference of September 14, 2006, Rester, when asked, "What evidence is there in the record that he ever requested McWane to accommodate him by paying for treatment," answered,

The evidence comes from the testimony of the plaintiff that the doctor instructed

14

his statement that he could not afford to undergo the alcoholism treatment at the Bradford Clinic constitutes a request that McWane reasonably accommodate his disability by funding such treatment.  Rester argues that, because his McWane-provided insurance coverage had been terminated by this time, he was unable to afford the alcoholism treatment.[33]

The parties differ as to whether the Blue Cross-Blue Shield policy provides coverage for alcoholism treatment.  Rester argues that it does.  McWane argues that it does not.  If the policy provides such coverage then Rester had the accommodation that he claims.  He just did not take advantage of it during the months he was on leave before Rester terminated the insurance coverage.  If the policy does not provide such coverage, this court concludes that the reasonable accommodation doctrine does not require that the employer pay for such treatment.

The Purportedly Requested Accommodation Was Unreasonable

The application of the ADA to alcoholism has not been expressly analyzed by the United States Supreme Court.[34]  Although the United States Court of Appeals for the Eleventh Circuit is among the circuit courts which have yet to engage in a seminal analysis of this issue,[35] in a recent

---

him to have the rehab at Bradford, that he wanted to have the rehab at Bradford,
that he could not afford it, and that he told the human resources person at
McWane, John North [sic], that he could not afford it.

[33] The court notes evidence submitted by McWane – and summarized at n.24, that shows the value of Rester's real and personal property.

[34] *See* 42 U.S.C. § 12114(c), for specific references to alcohol and alcoholism within the ADA. *See also Bailey v. Georgia-Pacific Corp.*, 306 F.3d 1162, 1167 n.4 (1st Cir. 2002) (noting that the ADA treats alcoholism "differently from other impairments and disabilities" in that it allows employers to ban alcohol consumption from the workplace and require that employees "not be under the influence of alcohol at work."  Employers may also hold an alcoholic employee to the "same qualification standards for employment or job performance and behavior" as a non-alcoholic employee, even if the unsuitable behavior is a result of the alcoholic employee's alcoholism).

[35] *Roberts v. Rayonier, Inc.*, 135 Fed. Appx. 351, 355 (11th Cir. 2005)(unpublished opinion)("[T]his circuit has not analyzed an alcohol-related ADA claim in depth...")

unpublished opinion it favorably cited the Fifth Circuit's ruling in *Burch v. Coca-Cola Co.,* 119

F.3d 305 (5th Cir. 1997).[36]  The following excerpts from *Burch* are instructive here.

> The ADA, its implementing regulations, and the EEOC's
> interpretive guidance make clear that an employer's obligation to
> provide a "reasonable accommodation," when triggered,
> *contemplates changes to an employer's procedures, facilities, or*
> *performance requirements that will permit a qualified individual*
> *with a disability to perform the essential functions of his or her*
> *job. In all cases a reasonable accommodation will involve a*
> *change in the status quo, for it is the status quo that presents the*
> *very obstacle that the ADA's reasonable accommodation provision*
> *attempts to address.* The ADA provides:
> "The term 'reasonable accommodation' may include-
> (A) making existing facilities used by employees readily accessible
> to and usable by individuals with disabilities; and
> (B) job restructuring, part-time or modified work schedules,
> reassignment to a vacant position, acquisition or modification of
> equipment or devices, appropriate adjustment or modifications of
> examinations, training materials or policies, the provision of
> qualified readers or interpreters, and other similar accommodations
> for individuals with disabilities." 42 U.S.C. § 12111(9).
>
> In addition to repeating the examples of reasonable
> accommodations set forth in the statute, the regulations define the
> term as "*[m]odifications or adjustments to the work environment,*
> *or to the manner or circumstances under which the position held*
> *or desired is customarily performed, that enable a qualified*
> *individual with a disability to perform the essential functions of*
> *that position.*" 29 C.F.R. § 1630.2( o )(1)(ii) (1996). The EEOC's
> interpretive guidance also emphasizes the protean nature of the
> employer's obligation. See 29 C.F.R. § 1630, App. (1996) ("In
> general, an accommodation is *any change in the work environment*
> *or in the way things are customarily done that enables an*
> *individual with a disability to enjoy equal employment*
> *opportunities.*").[37]

---

[36] *Id.* at 356.

[37] The court notes that these definitions and articulations of "reasonable accommodation" generally relate to
how the job is performed, and/or the conditions under which the job is performed.

*Id.* at 313-14 (emphasis added). The Fifth Circuit affirmed the district court's grant of summary

judgment as to Burch's ADA claim because he "failed to establish that his alcoholism interfered

in any way with his ability to perform the essential functions of an area service manager for

Coca-Cola without reasonable accommodation."

Rester has similarly failed to show that his alleged alcoholism impeded his ability to

perform the essential functions of his former position at McWane without a reasonable

accommodation. As is implicit in the Fifth Circuit's holding in *Burch*, the general tenor of the

statutory language regarding reasonable accommodations[38] consists of changes to the purportedly

disabled employee's workplace and/or work environment.[39] The various statutory and regulatory

---

[38] *See Burch,* 119 F.3d at 315, *citing Beck v. Univ. of Wisc. Bd. of Regents,* 75 F.3d 1130, 1135 (7th Cir. 1996)("It is plain enough what 'accommodation' means. The employer must be willing to consider making changes in *its ordinary work rules, facilities, terms, and conditions* in order to make a disabled individual to work")(quotation omitted)(emphasis added).

[39] *See also* 29 C.F.R. § 1630.2:

    (o) Reasonable accommodation.

        (1) The term reasonable accommodation means:

            (i) *Modifications or adjustments to a job application process* that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or

            (ii) *Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed,* that enable a qualified individual with a disability to perform the essential functions of that position; or

            (iii) *Modifications or adjustments* that enable a covered entity's employee with a disability to enjoy *equal benefits and privileges of employment* as are enjoyed by its other similarly situated employees without disabilities.

        (2) Reasonable accommodation may include but is not limited to:

            (i) *Making existing facilities used by employees readily accessible to and usable* by individuals with disabilities; and

            (ii) Job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other

provisions do not support Rester's contention that the ADA requires employers to finance an

employee's alcoholism treatment.[40]   Employers are only bound to provide unpaid time off for the

---

> similar accommodations for individuals with disabilities.
> (3) To determine the appropriate reasonable accommodation it may be
> necessary for the covered entity to initiate an informal, interactive
> process with the qualified individual with a disability in need of the
> accommodation.  This process should identify the precise limitations
> resulting from the disability and potential reasonable accommodations
> that could over some those limitations.

(Emphasis added.)

[40] When the ADA was under consideration on the floor of the United States Senate in 1989, the following exchange took place between Senator Armstrong and Senator Harkin, who sponsored the ADA:

> MR. ARMSTRONG.
> [...]For example, if a person is a consumer of illegal drugs, does he gain a
> protected status under this bill?
>
> Mr. HARKIN.
> I can answer definitively to the Senator that current users of illegal drugs are not,
> and we are working out a couple of amendments with the Senator from North
> Carolina and a couple of others to better clarify that.
>
> Mr. ARMSTRONG.
> I appreciate that.
> Would the same apply to alcohol abuse?
>
> Mr. HARKIN.
> The same thing applies to alcohol abuse.
>
> Mr. ARMSTRONG.
> I thank the Senator.

135 CONG. REC. S10734-02, S10753 (daily ed. Sep. 7, 1989).

Senator Harkin also indicated that the ADA would not require employers to finance alcohol rehabilitation services in comments made on the Senate floor during an exchange with Senator Coats:

> Mr. COATS.
>
> Is the employer under a legal obligation under the [Americans with Disabilities
> Act] to provide rehabilitation for an employee who is using illegal drugs or alcohol?
>
> Mr. HARKIN.
>
> No; there is no such legal obligation.
>
> Mr. COATS.
>
> Thank you, Senator.

employee to undergo treatment, not to pay for the treatment themselves.[41]

Rester's Alleged Alcoholism not Established<br>as Substantially Limiting the Major Life Activity of Work

In *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366 (11th Cir. 1998), the employee claimed

that he was disabled within the meaning of the ADA because his disabilities substantially limited

the major life activity of "work."  The court stated,

> The regulations implementing the ADA provide guidance on what
> a plaintiff must show to demonstrate he is substantially limited in
> the major life activity of working. With respect to the major life
> activity of working, the term "substantially limits" is defined as:

> "Significantly restricted in the ability to perform either a class of
> jobs or a broad range of jobs in various classes as compared to the
> average person having comparable training, skills and abilities. *The
> inability to perform a single, particular job does not constitute a
> substantial limitation in the major life activity of 'working.'*"

> 29 C.F.R. § 1630.2(j)(3)(I) [...] *see also Pritchard v. Southern Co.
> Servs.*, 92 F.3d 1130, 1133 (11th Cir. 1996) ("An impairment does
> not substantially limit the ability to work merely because it
> prevents a person from performing either a particular specialized
> job or a narrow range of jobs." (internal citations and quotations
> omitted)). A "class of jobs" is defined as:

> The job from which the individual has been disqualified because of
> an impairment, and the number and types of jobs utilizing similar
> training, knowledge, skills or abilities, within that geographical

---

135 CONG. REC. S 10765, S10777 (daily ed. Sep. 7, 1989).

[41] *See* Renee Parsons and Thomas J. Speiss III, *Does the Americans With Disabilities Act Really Protect Alcoholism*, 20 LAB. LAW 17, 38 (2004) ("[I]f the employee can show that his alcoholism affects a major life activity, then, upon the employee's request, the employer must reasonably accommodate the employee.  But the ADA only requires that the employee be given unpaid time off to participate in a treatment program.  Further, it is the employee's responsibility to request the accommodation.  But if the employee has been disciplined for misconduct attributable to the alcoholism, the employer is under no obligation to offer the employee a second chance at reasonable accommodation.  The ADA does not protect an alcoholic from the consequences of his behavior"), *citing Williams v. Widnall*, 79 F.3d 1003 (10th Cir. 1996), *and Van Ever, supra*.

area, from which the individual is also disqualified because of the
impairment.

29 C.F.R. § 1630.2(j)(3)(ii)(B).  A "broad range of jobs in various
classes" is defined as:

The job from which the individual has been disqualified because of
an impairment, and the number and types of other jobs not utilizing
similar training, knowledge, skills or abilities, within that
geographical area, from which the individual is also disqualified
because of the impairment.

29 C.F.R. § 1630.2(j)(3)(ii)(c)).  Therefore, to establish that he has
a "disability" under the "regarded as" prong of § 12102(2), Witter
must produce evidence showing that Delta regarded him as being
significantly restricted in the ability to perform either a class of
jobs or a broad range of jobs in various classes.

*Id.* at 1369-1370 (emphasis added). *See also Roberts v. Rayonier, Inc.*, *supra* n.35, at 355

(noting that employee claiming that his alleged alcoholism constituted a disability cognizable

under the ADA because it substantially limited him in the major life activity of work is "required

to prove that he is significantly restricted in the ability to perform either a class of jobs or a broad

range of jobs in various classes.")

Rester has made no such showing that he is substantially limited in the major life activity

of working in the "broad range of jobs in various classes" contemplated by the implementing

regulations to the ADA. *See id.* at 356 (evidence that employee's alcoholism affected the major

life activity of working because it affected his work performance, made him late for meetings,

created credibility problems with co-workers and with his union "falls well short of establishing

a disability" under the ADA).  As such, McWane is entitled to summary judgment as to Rester's

ADA claim.

**II.     ADEA/AADEA claim.**

The court will grant summary judgment as to Rester's ADEA and AADEA claims. Plaintiff has not proved a prima facie case nor offered any substantial evidence to rebut the defendants' stated reasons for termination. The evidence is overwhelming that, regardless of the merits of the ADA claim, the termination related not to age, but to alcoholism.

**III.    Effect of Prior Litigation.**

Because the court has granted summary judgment as to the ADA and ADEA/AADEA claims, it does not reach McWane's argument that this cause is barred by the doctrine of res judicata.[42]

For the reasons above delineated, this court will **GRANT** McWane's Motion for Summary Judgment. A corresponding Final Judgment is filed contemporaneously herewith.

This the 9th day of November, 2006.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[42] The court does note that dismissal of a cause on statute of limitations grounds does not constitute a judgment on the merits under Alabama law. *See Sims v. Geohagan*, 641 So. 2d 1237 (Ala. 1994) ("We observe that the federal court made no adjudication 'on the merits.' Sims's federal action was dismissed precisely because it could not properly be heard on the merits, specifically, because the limitations period had expired"), *and Clothier v. Counseling, Inc.*, 875 So. 2d 1198 (Ala. Civ. App. 2003).



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Birmingham District Office

Ridge Park Place
1130 22ⁿᵈ Street, South, Suite 2000
Birmingham, AL 35205
(205) 731-0082
TTY (205) 731-0175
FAX (205) 731-0095

Mr. Robert Rester
275 Nisbet Lake Rd.
Jacksonville, AL 36265

DEFENDANT'S
EXHIBIT
16

Our Reference: 130A301345

Dear Mr. Rester:

Based on my analysis of the material and testimony which you presented previously, I have concluded that it is unlikely that additional investigation would result in a finding that the law was violated, as you alleged in the above referenced charge. I have arrived at this conclusion because:

The facts you have presented, all of which have been accepted as true, do not rise to the level of a violation of the law. Thus, there is no claim that a violation occurred as you alleged under the statutes enforced by the Commission. Your age and your alleged disability does not appear to have played any part in the employer's decision to terminate you. Your cardiac condition is not a disability because it has been successfully treated. Under the Americans with Disabilities Act, your alcoholism would be considered a disability only if you were seeking treatment. However, you were terminated because you declined treatment for your alcoholism.

The Commission's Dismissal and Notice of Rights is enclosed. The Notice provides you with the opportunity to pursue your case in Federal district court should you disagree with EEOC's determination. Should you decide to pursue your case in Federal court, you must do so within 90 days from the date you receive the Notice of Right to Sue.

Sincerely,

Wonder Osborne

Wonder I. Osborne
Investigator

_5/22/03_
Date

cc:  Clinton C. Carter, attorney

EEOC Form 161 (11/89)   **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: Robert Rester<br>275 Nisbet Lake Road<br>Jacksonville, AL 36265 | From: Birmingham District Office<br>Ridge Park Place, Suite 2000<br>1130 - 22nd Street, South<br>Birmingham, AL 35205 |
|---|---|

[  ]   *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 130-2003-1345C | Wonder I. Osborne, Investigator | 205-731-1092 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[  ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[  ]   Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[  ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[  ]   We cannot investigate your charge because it was not filed within the time limit required by law.

[  ]   Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[  ]   While reasonable efforts were made to locate you, we were not able to do so.

[  ]   You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ X ]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[  ]   Other *(briefly state)*  _____

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____     _____
                                                          *(Date Mailed)*

Enclosure(s)

cc:

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS --**   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
or the Age Discrimination in Employment Act (ADEA):

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge __within
90 days__ of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day
period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult
an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or
her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it
is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the
Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases
can be brought where relevant employment records are kept, where the employment would have been, or where the
respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk
of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy
decisions for you.

**PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment:
backpay due for violations that occurred more than __2 years (3 years)__ before you file suit may not be collectible.
For example, if you were underpaid under the EPA for work performed from 7/1/96 to 12/1/96, you should file suit
__before 7/1/98__ -- *not* 12/1/98 -- in order to recover unpaid wages due for July 1996. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore,
if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be
filed within 90 days of this Notice __and__ within the 2- or 3-year EPA backpay recovery period.

**ATTORNEY REPRESENTATION -- Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having
jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance
must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in
detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period
mentioned above, because such requests do __not__ relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have
any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need
to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and
provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all
charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to
review the charge file, **please make your review request** __within 6 months__ of this Notice. (Before filing suit, any
request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*